Brentwood Family Division
No. 2003-132

IN THE MATTER OF JESPER GRONVALDT AND CLAUDIA GRONVALDT

Argued: January 7, 2004
Opinion Issued: February 17, 2004

*Law Office of Patrick J. Devine, P.C.*, of Plaistow (*Patrick J. Devine* on the brief and orally), for the petitioner.

*Wyskiel, Boc & Tillinghast, P.A.*, of Dover (*William E. Boc* and *Maureen A. Howard* on the brief, and *Mr. Boc* orally), for the respondent.

BRODERICK, C.J. The petitioner, Jesper Gronvaldt, appeals from his divorce decree. He contends that the Brentwood Family Division (*Taube*, J.) erred in: (1) granting a fault divorce pursuant to RSA 458:7, V (1992); (2) finding, without benefit of expert testimony, that the respondent, Claudia Gronvaldt, suffered emotional abuse and distress; and (3) failing to give specific reasons for the unequal division of assets and the amount and duration of alimony. The petitioner further contends that the evidence does not support the division of assets or award of alimony. We affirm.

The parties were married in 1986; no children were born of the marriage. In 2002, following a two-day hearing, the trial court awarded the respondent a decree of divorce on the grounds of treatment to endanger her health and reason pursuant to RSA 458:7, V. The court found that an unequal distribution of the parties' assets was equitable and awarded the

respondent 60% of the parties' marital assets. The court also awarded the respondent alimony of $1500 per month for five years.

The petitioner first argues that the record does not support the trial court's order that the respondent was entitled to a divorce pursuant to RSA 458:7, V. That statutory provision permits a divorce in favor of the innocent spouse when the offending spouse has so treated the other as seriously to injure health or endanger reason. The legislature first enacted this language in 1840, recognizing that "[c]onstant, innumerable, and nameless indignities of speech and action, each possibly petty in itself, might cause mental anguish less endurable, more hurtful to physical well-being, and more likely to overturn reason, than any degree ... produced by blows." *Robinson v. Robinson*, 66 N.H. 600, 609 (1891). We have since construed this language to insure that those who were the focus of its protection remain within its ambit. *See id.*; *Szulc v. Szulc*, 96 N.H. 190 (1950) (divorce granted due to respondent's drinking where, although it did not affect his employability, it caused petitioner to lose weight and sleep due to his abusive and profane language and enuresis); *Routhier v. Routhier*, 128 N.H. 439, 440 (1986) (divorce granted due to defendant's excessive drinking and affairs which caused plaintiff to seek counseling).

We have previously held that RSA 458:7, V does not require proof of conduct that would have affected an average or reasonable person, but only that the health or reason of the complaining spouse was actually affected. *See Routhier v. Routhier*, 128 N.H. at 440. Whether the innocent party has been so treated is a question of fact to be determined by the trial court. *See Robinson v. Robinson*, 66 N.H. at 609. We will sustain its findings and rulings unless they are lacking in evidential support or tainted by error of law. *In the Matter of Letendre & Letendre*, 149 N.H. 31, 34 (2002).

In this case, the trial court found that the petitioner drank alcohol on a daily basis, often consuming six beers in a night, and that the respondent attended Al-Anon due to his drinking habits. The petitioner's excessive drinking, the court found, caused the respondent to suffer emotional distress. The trial court also found that the petitioner became so intoxicated that he urinated in the parties' closet and thereafter became angry and verbally abusive when the respondent attempted to clean up after him. In addition, the court found that on one occasion the petitioner threatened to punch the respondent, while on another occasion he assaulted her, resulting in his arrest. The trial court further found that during the parties' marriage the petitioner exhibited uncontrolled anger and would scare, coerce and intimidate the respondent. His abusive

behavior caused the respondent to undergo counseling during their marriage. While the testimony presented by the parties conflicted, the trial judge was in the best position to evaluate the evidence, measure its persuasiveness and assess the credibility of witnesses. *Hoffman v. Hoffman*, 143 N.H. 514, 519 (1999). Because the trial court's findings are supported by the record, we find no error in its decision to grant the divorce on the ground that the petitioner so treated the respondent as seriously to injure her health or endanger her reason. *See* RSA 458:7, V.

■ The petitioner next argues that because the respondent failed to offer expert testimony, the trial court erred in finding emotional abuse and emotional distress. We have long recognized that "[e]xpert testimony is required only where the subject presented is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *Transmedia Restaurant Co. v. Devereaux*, 149 N.H. 454, 460 (2003) (quotations omitted). In this case, the trial court not only found that the petitioner had physically assaulted the respondent, but also that he was emotionally abusive: often threatening, demeaning and belittling her. The court further concluded that the petitioner's excessive drinking caused the respondent significant emotional distress. Indeed, the respondent attended Al-Anon and underwent counseling.

On these facts, the trial court could reasonably conclude without expert testimony that the petitioner so treated the respondent as seriously to injure her emotional health or endanger her reason. While there may be cases in which expert testimony would be required to establish such a fault ground, this is not one of them. The evidence of abusive conduct in this case would allow the average layperson to make the disputed findings of fault.

The respondent further contends that the trial court erred by failing to articulate specific reasons for its division of assets and asserts that there was insufficient evidence to justify an unequal distribution. We disagree. The trial court "has broad discretion in determining matters of property distribution and alimony [when] fashioning a final divorce decree." *In the Matter of Letendre & Letendre*, 149 N.H. at 34. Absent an unsustainable exercise of discretion, we will not overturn its ruling or set aside its factual findings. *Id.*

■ RSA 458:16-a, II (1992) provides that an equal division of marital assets is presumed to be equitable unless the court concludes that such a division would be inappropriate or inequitable after considering one or more of several enumerated factors. The factors include the age, occupation and employability of each party, *see* RSA 458:16-a, II(b), as well

as the fault of either party in causing the breakdown of the marriage, if the fault "[c]aused substantial physical or mental pain and suffering," RSA 458:16-a, II(l). In its nine-page decree granting the fault divorce, the trial court found that the respondent had supported the petitioner throughout his career and had only recently entered the job market in an area with limited income-growth potential. The court also addressed the parties' 119 requests for findings of fact and rulings of law. *See In the Matter of Letendre & Letendre*, 149 N.H. at 35 (ruling that trial court gave sufficient reasons to justify unequal apportionment of marital assets). In addition to finding that the petitioner had enjoyed a successful career as a consulting engineer, the court granted several requested findings which supported its conclusion that the respondent had suffered significant emotional distress as a result of the petitioner's behavior during their marriage. Given the two independent statutory factors cited by the trial court and supported by the record, we find no error in its unequal distribution of marital assets.

Finally, the petitioner argues that the trial court failed to provide specific reasons for the amount and duration of its alimony award and that the evidence fails to support the award. RSA 458:19 (Supp. 2003) authorizes the trial court to award alimony when: (1) the party in need lacks sufficient income, property or both to provide for such party's reasonable needs; (2) the party from whom alimony is sought has the ability to meet reasonable needs while meeting the needs of the party seeking alimony; and (3) the party in need is unable to be self-supporting through appropriate employment at a standard of living that meets reasonable needs. In determining the parties' needs, the trial court must consider the style of living they enjoyed during their marriage. *Id.*

In this case, the trial court heard testimony that the respondent had no pension and that she sought payment of alimony for five years until she reached the age of sixty-two. The court found that the petitioner had the ability to provide, and the respondent had a need for, $1500 a month in alimony over that time period. The trial court further found that during their marriage the respondent supported the petitioner in his career, and had only recently entered the job market in an area with limited potential for income growth. The court observed that the parties' marriage was long-term and that the respondent was fifty-seven years old. It also considered the opportunity of each party for future acquisition of capital assets and examined the income and fault of the petitioner. *See* RSA 458:19, IV(b) (Supp. 2003). Further, the court made findings concerning the value of the petitioner's pension and considered the expenditures that he had made from those funds since the date he filed for divorce.

In light of the above, we conclude that the trial court made sufficient findings and rulings for its alimony award and that the evidence was sufficient to support them.

*Affirmed.*

NADEAU and DUGGAN, JJ., concurred; DALIANIS, J., dissented.

DALIANIS, J., dissenting. Respectfully, I dissent for two reasons. First, I believe that the trial court should have required expert testimony before granting a divorce pursuant to RSA 458:7, V (1992). Second, I believe that the evidence in this case was insufficient to support the trial court's grant of divorce pursuant to RSA 458:7, V.

RSA 458:7, V addresses two fault-based grounds for divorce. The first, treatment that seriously injures health, refers to harm to "physical well-being." *Robinson v. Robinson*, 66 N.H. 600, 609 (1891). The second, treatment that endangers reason, refers to "mental anguish" or having one's sanity at risk. *Id.* at 609-10. Only the second of these grounds is at issue in this case.

In the past, we have conflated the two grounds by ruling that serious injury to health encompasses emotional health, too. *See, e.g., Buck v. Buck*, 97 N.H. 178, 179 (1951) (court affirms grant of divorce based upon treatment seriously injuring health where complaining spouse suffered weight loss and "had nervous spells when she would start to shake and cry and laugh all at the same time"). I believe that the use of the disjunctive "or" shows that the legislature intended the two grounds to be separate.

The focus of RSA 458:7, V is upon the effect of the conduct upon the complaining spouse. While the statute does not require proof of conduct that would have endangered the reason of an average or reasonable person, it does require proof that the conduct *actually* endangered the reason of the complaining spouse. *Robinson*, 66 N.H. at 610.

To establish that the other spouse's conduct endangered the complaining spouse's reason, the complaining spouse should be required to prove more than "mere upset, dismay, humiliation, grief and anger." *Corso v. Merrill*, 119 N.H. 647, 653 (1979). He or she should be required to show that he or she suffered at least a "painful mental experience with lasting effects" and that his or her emotional injury is "susceptible to some form of objective medical determination" and proof "through qualified medical witnesses." *Id.*; *see also Palmer v. Nan King Restaurant*, 147 N.H. 681, 684 (2002).

Although we have not ruled on this issue before, I note that in cases interpreting RSA 458:7, V, "qualified medical witnesses" have

corroborated the testimony of the complaining spouse. *See Robinson*, 66 N.H. at 601; *Buck*, 97 N.H. at 179.

"While expert testimony may not be required when the evidence . . . is so patent and conclusive that reasonable persons can reach only one conclusion, this is not such a case." *Wong v. Ekberg*, 148 N.H. 369, 374 (2002) (quotation and citation omitted). At most, the petitioner's uncorroborated testimony established that she felt confused and frightened of the respondent and that, in approximately sixteen years of marriage, she received counseling for six months and attended self-help groups.

I would hold that this evidence was insufficient as a matter of law to establish that the respondent's conduct endangered the petitioner's reason. *See Routhier v. Routhier*, 128 N.H. 439, 440 (1986) (complaining spouse needed counseling for two years during marriage and also after separation); *Szulc v. Szulc*, 96 N.H. 190, 191 (1950) (court finds treatment seriously injurious to emotional health where complaining spouse "lost considerable weight, became tired and nervous and was a complete wreck" (quotation omitted)).